In the Matter of H. Edward MAULL, Sr., a Member of the Bar of the State of Delaware.

Supreme Court of Delaware.
July 23, 1969.

Arthur Dean Betts, Georgetown, for the Censor Committee.

H. Edward Maull, Sr., per se.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

The Censor Committee of this Court has filed a Final Report recommending that appropriate disciplinary action be taken against the respondent, H. Edward Maull, Sr., a member of the Bar of this State.

## I.

After hearing duly held, in which the respondent participated, the Censor Committee made findings of fact substantially as follows:

The respondent was attorney for Mr. and Mrs. John A. Futcher in an action in the Superior Court involving a controversy over title to certain real property. The case was tried on February 9, 1967 before the Court without a jury; the Trial Judge reserved decision. On March 17, the Futchers learned from a friend that the Court had held against them in the case. When the Futchers telephoned the respondent that day, he stated that he had not received the Court's decision. On the same afternoon, when they conferred with the respondent in his office, the Futchers saw the Court's opinion on his desk, dated March 7. Although the respondent made no explanation to the Futchers, he testified at the hearing before the Censor Committee that he had been away and had not seen his mail before the Futchers telephoned and arrived at his office.

At the meeting in the respondent's office on March 17, there was discussion of an appeal; and it was decided to have a further meeting to review the evidence with a surveyor. On March 20, the respondent held a conference with the Futchers and the surveyor. It was agreed at the conclusion of that meeting that the respondent would appeal the Superior Court's decision; and the respondent undertook to perfect such appeal.[1]

No appeal was ever taken. After the meeting of March 20, until the middle of December, the Futchers endeavored, by numerous telephone calls to the respondent, to ascertain the status of the appeal. The Censor Committee's specific findings of fact, from this stage on, are as follows:

"* * * In the telephone conversations which Maull had with them he knowingly gave them the impression that whatever steps were needed to perfect the appeal had been taken * * * and that the delay in the hearing on the appeal arose from other problems, including a representation that the Court calendar was full, that there had been a delay because of Mrs. Maull's illness (and we find she was ill during this period), that the case was about to be scheduled and he would call in about two weeks concerning it, that the Court was not currently in session, or that he merely had not been notified about the date set for the hearing. * * * As time passed by, the Futchers became more and more concerned. Maull knew or should have known after May of 1967 that the time for appeal had expired, but he continued to give the Futchers the impression up until late December, 1967, that everything that was necessary had been done, and that they could expect their case to be heard in due course.

"In the middle of December, Mrs. Futcher called Maull and, for the first time, specifically inquired about the date when the appeal had been filed. In that telephone conversation, Maull disclosed to her for the first time that he had not filed such an appeal, but indicated that he would after the first of the year. * * * This disclosure disturbed the Futchers, but they still did not know that it was already too late for an appeal to be perfected.

"Early in January, about January 2, 1968, the Futchers became aware of the fact that some earth moving was taking place on the disputed land or on nearby

---

1. The respondent denied this crucial fact at the oral argument in these proceedings; but the respondent failed to file written exception to the Committee Report as he was entitled to do under Rule 32(3) of this Court, Del.C.Ann.

land to which they also claimed title, and Mrs. Futcher called Maull about this. * * * Maull advised them that he would take care of this right away, and told them that the adverse parties should not be moving dirt since their lawyer was aware of Maull's plans to complete an appeal. * * * At that time, Maull knew or should have known that it was already too late to complete such an appeal. About January 17, 1968, Mr. or Mrs. Futcher called Maull one last time. * * * His response to their inquiries about the appeal was evasive. They then consulted another attorney and learned for the first time that the appeal time would have expired early the previous May, 1967 * * *."

Finally, the Censor Committee found and reported that, in the proceedings before it there was a "lack of candor" on the part of the respondent and that he failed to cooperate with the Committee properly.

█ The Committee's Final Report has the force and effect of a Master's Report.

No exceptions to the Committee's Final Report was filed by the respondent under Rule 32(3) of this Court.

## II.

The Canons of Professional Ethics, as adopted by the American Bar Association and in effect at the time of adoption of Rule 33(2) of this Court, govern the conduct of members of the Bar of this State by virtue of that Rule.

Canon 15 prescribes that every lawyer of this State owes to his client "entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability."

Canon 21 prescribes punctuality and expedition in the disposition of causes as a duty of every lawyer to his client.

Canon 22 prescribes that the conduct of every lawyer "before the Court and with other lawyers should be characterized by candor and fairness." The Censor Committee is an arm of this Court; therefore, Canon 22 applies to proceedings before the Censor Committee.

The oath of office taken by each member of the Bar of this State, upon admission, includes the promise to behave "according to the best of [his] learning and ability and with all good fidelity, as well to the Court as to the client."

## III.

Upon careful consideration of the record, we are satisfied that the Censor Committee's findings of fact are warranted by the evidence and that the Committee's conclusion that the respondent has been guilty of unprofessional conduct is warranted by the facts. Accordingly, we affirm the findings and conclusion and accept the Committee's recommendation that appropriate disciplinary action be taken against the respondent. That this result is correct is clear from the many cases on the general subject collected at Annotation, 96 A.L.R.2d 823–892.

█ The respondent has been found guilty of unprofessional neglect and inattention to the affairs of his clients. This neglect has been found to be accompanied by an element of wilfulness and deceit in that misrepresentations were made to the clients of attention to their affairs in order to conceal inattention. Clearly, both the neglect and the misrepresentations were in violation of the Canons of Ethics and the respondent's oath of office.

In the case of In re Member of the Bar, Del.Sup., 226 A.2d 705, 708 (1967),[2] we stated:

"This Court, charged with the duty of upholding and enforcing the ethical standards of the profession, cannot and

---

2. This case was reported anonymously because the lawyer's neglect of his clients' affairs was unaccompanied by any deceit or misrepresentation of fact and because none of the clients suffered any pecuniary loss.

will not tolerate the negligent disregard of a client's interests by a member of this Bar. Too often it has come to our attention that a member of the Bar has delayed his client's business by reason of either laziness or a cavalier approach to the client's interests. Indeed, most complaints filed against lawyers before the Censor Committee are the result of either the dilatoriness of the lawyer, or his failure to keep his client informed of what he has done. We will not condone such irresponsible conduct on the part of a member of this Bar."

We solemnly reaffirm that statement. In addition, we denounce as particularly reprehensible the element of wilfulness and deceit found in this case. The misconduct found here constitutes very serious violations of the high professional standards required of every member of the Bar of this State. False and misleading statements to a client constitute a gross abuse of the trust and confidence reposed in an attorney by his client. This Court deplores such misconduct and pronounces it intolerable. Clearly, disciplinary action is warranted here.

The remaining question is the nature of the punishment to be imposed. As may be seen from the Annotation at 96 A.L.R.2d 823, 835–839, 845–848, punishments in this type of disciplinary action have ranged from private censure to the ultimate penalty of disbarment, depending upon the facts and circumstances of the case.

Mitigating circumstances are to be considered. In this connection, we have considered the fact that, during the period of time involved, the respondent was beset with personal problems including serious illness in his family. We have also considered the fact that the respondent has been a member of this Bar for over 25 years and that never before has he been subject to disciplinary proceedings in this Court. Finally, we consider the fact that the respondent is insured for professional negligence and that the clients may look to the respondent and his insurance carrier for such recovery as they may be entitled to under the law.

In view of such mitigating circumstances, we have concluded that this public reprimand and censure will be sufficient disciplinary action in this case. We refrain from further discipline in the hope that this censure will suffice to prevent a recurrence.