Evelyn M. GEBHART and Evan T. Gebhart, her husband, Plaintiffs Below, Appellants,

v.

ERNEST DISABATINO & SONS, INC., a corporation of the State of Delaware; E. F. Higgins Company, Inc., a corporation of the State of Delaware; and George E. Pope, Albert Kruse and John F. McCune, III, t/a Pope, Kruse & McCune, a partnership, Defendants Below, Appellees.

Supreme Court of Delaware.

Feb. 18, 1970.

Petition for Reargument Denied March 6, 1970.

Stanley T. Czajkowski and Michael P. Maguire, Wilmington, and Charles A. Lord, Philadelphia, Pa., for plaintiffs below, appellants.

William Prickett of Prickett, Ward, Burt & Sanders, Wilmington, for E. F. Higgins Company, Inc., defendants below, appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice.

This appeal brings up the propriety of the dismissal with prejudice of the plaintiffs' case by the Superior Court for noncompliance by plaintiffs' attorneys with Court Rules and pre-trial orders.

I.

These are the relevant facts:

The plaintiff, Mrs. Evelyn Gebhart, was a school nurse. A fire broke out in the boiler room of the school, resulting in damage to the electrical system of the building. The damage was repaired by the defendant E. F. Higgins Company, Inc. (hereinafter "Higgins"). A short time later, on March 12, 1965, Mrs. Gebhart was on duty in the school infirmary located some distance from the boiler room. She touched a metal linen closet and, thereupon, she allegedly received an electric shock which knocked her off her feet and caused her serious personal injuries.

On March 10, 1967, two days before the expiration of· the limitations period, the plaintiffs, Mr. and Mrs. Gebhart, brought an action for such personal injuries against those involved in the repair and renovations: Ernest DiSabatino & Sons, Inc., the general contractor; Pope, Kruse & McCune, the architects; and Higgins, the electric sub-contractor. The complaint was filed on behalf of the plaintiffs by their attorneys Charles A. Lord, Esquire, of Philadelphia, as attorney in charge of the case, and Stanley T. Czajkowski, Esquire, of Wilmington, as local counsel. Specific acts of negligence were alleged against each defendant. In addition, as to Higgins, the doctrine of *res ipsa loquitur* was invoked.

On March 31, 1967, Higgins appeared, answered, and filed discovery notices and applications of various kinds. During the following twelve month period, the plaintiffs took no further action in the case, except for a brief deposition. The interrogatories and other discovery efforts of Higgins were generally ignored, in violation of the Superior Court Civil Rules governing the flow of discovery.

At the March Term of 1968, becoming disturbed by non-action in the cause, the defendant Higgins applied for trial. The first pre-trial conference was held on· March 14, 1968, but it was not attended by Mr. Lord. The Court set the trial for June 10, 1968, after entering a pre-trial order requiring, *inter alia,* that both parties perfect their discovery in time for trial on that date. The trial of· the case was ultimately continued, however, upon the plaintiffs' application on the ground of Mrs. Gebhart's illness.

The case then appeared on the calendar at the September Term, and a second pre-trial conference was scheduled and held on September 9, 1968. Again Mr. Lord failed to attend. The plaintiffs applied for a continuance, this time on the ground that Mr. Gebhart was ill. The trial was continued but, upon the insistence of Higgins,

the case was then and there set down for trial on January 27, 1969.

The attorney for Higgins prepared the September pre-trial order, requiring *inter alia* (1) the plaintiffs' attorneys to notify all concerned by November 1 whether the plaintiffs were physically capable of going to trial in January 1969; (2) a "statement of the theory of the plaintiffs' case against each of the defendants and a list of the addresses and specialties of plaintiffs' experts"; and (3) a third pre-trial conference on November 27, 1968 at 3:00 p. m. to be attended by Mr. Lord.

The attorneys for the plaintiffs failed to comply with the first two above-mentioned requirements of the September pre-trial order. As to the third requirement of another pre-trial conference on November 27, about three hours before the scheduled time therefor, the plaintiffs' local attorney telephoned Higgins' attorney and stated that Mr. Lord could not attend the pre-trial conference because of illness. As a result, the third pre-trial conference was postponed to December 6, and again to December 12. In the meanwhile, the plaintiffs' attorneys had failed to comply with the. requirement of the September pre-trial order that a statement of the plaintiffs' theory of the case be filed; and had noticed the depositions of four witnesses to be taken on December 10, none of the witnesses being newly discovered.

At the pre-trial conference on December 12, Higgins filed a motion to dismiss the complaint for failure of plaintiffs' attorneys to comply with various pre-trial orders and Rules of Court. Mr. Lord was in attendance; he apologized to the Court and assured it of corrective action. The Court reserved decision on the motion to dismiss and entered a third pre-trial order requiring *inter alia* that the "attorneys for the plaintiffs are to serve and file no later than December 27, 1968 a statement as to the plaintiffs' theory of the case ·as to ·each defendant."

The plaintiffs' attorneys again failed to comply with the Court's directive. On January 7, 1969, Higgins' attorney renewed his motion to dismiss the complaint. Thereupon, the Court issued a directive ordering the plaintiffs' attorneys to show cause on January 15, 1969 why the case should not be dismissed. Mr. Lord responded initially to the Court by telephoned message seeking to make excuses. After hearing Mr. Lord and other counsel on January 15, the Trial Court dismissed the plaintiffs' action with prejudice, stating:

> "I was persuaded at the last pre-trial conference of the case that, by all justice, the case ought to be dismissed. I have not seen a case in which the Plaintiff had more disregard for the Court rules and the Court's orders. I refrained from doing it at that time with the recognition that we were dealing with counsel from a different state, that we were dealing with an individual, a wife in this case who apparently has suffered extremely serious injuries, and I felt constrained to withhold any dismissal and, therefore, did not act as I might otherwise have acted at that time from a purely legal point of view. But in conjunction with not acting on the motion at that time, it was resolved, as I saw it, in this room and with these counsel present, that there would be a compliance from here on in. There were assurances on top of assurances given by Plaintiffs' counsel. We are now on the very eve of trial and we have accomplished very little.

> "I agree in substance with what Mr. Prickett has said about prejudice to the Defendants and I feel the time has come, and the Court will therefore enter the order of dismissal at this time."

The plaintiffs appeal from that order of dismissal.

II.

■ The authority of the Superior Court to dismiss a plaintiff's action, for failure to prosecute or to comply with its Rules or orders, is clear. The power has its origins in the common law judgments of non suit and *non prosequitur*. It is an inherent power of the Trial Court arising from the control necessarily vested in the Court to manage its own affairs and to achieve the orderly and expeditious disposition of its business. This power has been recognized by Superior Court Civil Rule 41(b).* Thus, whether the order of dismissal entered in the instant case can stand depends not on the power of the Court to enter it, but on the question of whether the action taken was within the realm of sound judicial discretion. See Link v. Wabash Railroad Company, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

■ We are of the opinion that the Superior Court's dismissal of this action was within the permissible range of the Court's discretion. The history of the case demonstrates a dilatory course of conduct by the plaintiffs' attorneys over a period of almost two years. Rules of Court were continuously disregarded. Orders of the Court were persistently and repeatedly ignored. The demonstrated patience of the Court was tried and exhausted. Accordingly, we cannot say that the Superior Court abused its discretion in exercising, finally, its inherent power to terminate counsel's objectionable course of conduct toward the Court's processes and orders. Indeed, we think the Court was obliged to act in order

---

\* Superior Court Civil Rule 41(b) provides in pertinent part:
  "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * *

Unless the court in its order for dismissal otherwise specifies, a dismissal under this sub-division and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

to maintain its stature and the integrity of is orders.

▬▬▬ The plaintiffs' attorneys argue that the dismissal imposes an unjust penalty upon the plaintiffs. We cannot agree. The plaintiffs cannot avoid the consequences of the acts or omissions of their attorneys. Under our system of representative litigation, each party must be deemed bound by the acts of his lawyer-agent. Compare Stuart v. Rizzo, Del.Supr., 242 A.2d 477 (1967). Faults of omission or commission by the plaintiffs' attorneys must be imputed to the plaintiffs. Ayers v. D. F. Quillen & Son, Inc., Del.Supr., 188 A.2d 510 (1963); Link v. Wabash Railroad Company, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). We have sympathy for the plaintiffs; but our system necessarily imposes upon them the consequences of their chosen attorneys' course of conduct

in these circumstances; and we may not overlook the rights of the defendant Higgins which are also entitled to protection by our Courts. In the final analysis, the plaintiffs must look to their attorneys for an accounting for their actions in this cause. Compare In re Maull, Del.Supr., 256 A.2d 746 (1969).

We have considered Manekofsky v. Baker, 92 R.I. 377, 169 A.2d 376 (1961) upon which plaintiffs' attorneys place principal reliance. There a dismissal was reversed. That case is inapposite because it involved a dismissal by the Trial Court based upon a single instance of failure to comply with a court order. The Supreme Court of Rhode Island there recognized that a dismissal is justified where there are "unjustified and persistent" refusals to obey orders of the court.

Affirmed.