STATE of Delaware, Plaintiff
Below, Appellant,

v.

Wilbert C. HARRIS, Defendant
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 15, 1992.
Decided: Sept. 24, 1992.

Richard E. Fairbanks, Jr. of the Dept. of Justice, Chief Appeals Div., Wilmington, for appellant.

Joseph A. Hurley, Wilmington, for appellee.

Before HORSEY, WALSH and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal by the plaintiff-appellant, State of Delaware ("State"). 10 *Del.C.* § 9902(a). It follows the *sua sponte* pretrial dismissal by the Superior Court of all criminal charges in an Indictment returned against the defendant-appellee, Wilbert C. Harris ("Harris"). The State contends that the Superior Court's action was an abuse of discretion.

The basis for the *sua sponte* dismissal was what the Calendar Judge of the Superior Court perceived to be the defiance of his scheduling instructions by the Deputy Attorney General assigned to try Harris' case ("Trial Deputy"). The record reflects

that the Calendar Judge's scheduling instructions were conveyed to the Trial Deputy by a bailiff. The record also reflects that the instructions actually conveyed to the Trial Deputy, by a bailiff, may not have been a verbatim recitation of the Calendar Judge's directions.

The State argues that the Trial Deputy's actions were a good faith response to the scheduling instructions which were actually received from the bailiff and caused no delay or prejudice in the Harris proceedings. In support of its argument, the State notes that Harris' attorney acknowledged, on the record in the Superior Court, that there had been no prejudice to Harris by the State's conduct. Accordingly, the State contends that the ultimate sanction of dismissal, imposed by the Calendar Judge, was inappropriate in this case. We agree.

### Facts

On September 25, 1991, Harris was arrested on charges of trafficking in cocaine and possession with intent to deliver cocaine. The following month, he was indicted by the Grand Jury. Harris' attorney filed a motion to suppress certain evidence. Super.Ct.Crim.R. 41. A hearing on that motion was scheduled for January 15, 1992, preceding the commencement of Harris' trial.

The *sua sponte* dismissal of Harris' Indictment arose in the context of the Superior Court's administrative efforts to control its extremely crowded docket. The Superior Court has established a practice whereby, on a rotating basis, one member of the Superior Court in New Castle County acts as the criminal calendar judge ("Calendar Judge"). The Calendar Judge remains in one courtroom with a Deputy Attorney General ("Calendar Deputy") and all of the attorneys representing the defendants who have been scheduled to appear on a particular day. The Calendar Judge accepts guilty pleas from those defendants who have decided not to go to trial. The Calendar Judge also assigns courtrooms and judges for those cases which will proceed to trial.

In this case, Harris had elected to have a trial. A trial and a hearing on Harris' pretrial motion to suppress evidence appeared on the January 15, 1992 criminal trial calendar. When the criminal calendar was being called on that date, Harris' attorney was still completing a prior trial, with another client, in a separate courtroom. The Calendar Judge assigned Harris' trial and motion to suppress to the same Superior Court judge ("Trial Judge") who was presiding over the trial in progress which involved Harris' attorney. According to the Calendar Judge, he directed the bailiff to advise the Trial Deputy to be in the courthouse, with all of the State's witnesses, and ready to proceed in Harris' case at 11:30.

The record reflects that the bailiff does not remember the actual instructions he communicated to the Trial Deputy. Following a remand from this Court, the bailiff testified that all he recalls advising the Trial Deputy was to "make sure she was ready to go forward at 11:30 a.m." Nevertheless, it is undisputed that in response to the bailiff's communication, the Trial Deputy and the State's first witness were in the courthouse *prior* to 11:30 a.m. The undisputed record also reflects that the Trial Deputy had advised the State's second witness, who was ten minutes away, that he would be "beeped" when the hearing on Harris' motion began, so that he could arrive before the State's first witness finished testifying.

The Trial Deputy waited, beginning at approximately 11:00 a.m., outside the chambers of the Trial Judge for the other trial, involving Harris' attorney, to be completed. The Trial Judge and Harris' attorney emerged from the prior unrelated trial at approximately 12:00 p.m. The Trial Judge asked the Trial Deputy if the State was ready to proceed with the hearing on Harris' motion to suppress. The Trial Deputy responded affirmatively, stating that the State's first witness was present in the courthouse and the State's second witness was "on call", ten minutes away.

The Trial Judge then decided that it would be a good time to break for lunch.

He advised the Trial Deputy and Harris' attorney that the hearing on Harris' motion to suppress would begin at 1:30 p.m. The Trial Deputy left to advise her witnesses of the scheduling change and to have lunch herself. Harris' attorney proceeded to the calendar courtroom to represent another client in entering a guilty plea.

Apparently, on his way to the calendar courtroom, Harris' attorney encountered the Calendar Judge in the corridor. The Calendar Judge asked Harris' attorney about the status of the hearing on the motion in Harris' case. The attorney advised the Calendar Judge that the Harris suppression hearing was scheduled to begin at 1:30 p.m. While still in the corridor, Harris' attorney overheard the Calendar Judge ask the bailiff if the State had been ready to proceed on Harris' motion, with all of its witnesses present, at 11:30 a.m.

Unfortunately, the Calendar Judge apparently formulated a mistaken impression that none of the State's witnesses in the Harris matter had ever appeared at the courthouse. The following exchange is reflected on the record of the proceedings, which ensued in the calendar courtroom, shortly thereafter, when Harris' attorney appeared to enter a guilty plea with another client at approximately 12:30 p.m.:

[Trial Deputy]: [The next] plea is number six, Joseph Demaio [another client of Harris' attorney].

[Calendar Judge]: Is Mr. Harris being held?

[Harris' Attorney]: Yes, he's incarcerated not on these charges though. He's in lieu of bail on independent charges. If there is some adjustment problem, there is no prejudice to him given everything else that is involved.

[Calendar Judge]: The Court has been prejudiced by the State not doing what it was ordered to do having its witnesses here on time, so as to the charges number fourteen, they are dismissed.

[Calendar Deputy]: Excuse me, Your Honor, I have no context—are you talking about the arraignment calendar?

[Calendar Judge]: Number fourteen on the trial calendar. State was request-ed to have its witnesses ready by 11:30. [The trial judge] was told to go so he could finish a suppression hearing on these matters and then start a trial today before he had to leave early for a doctor's appointment.

He's not able to do the trial because the suppression hearing was delayed until 1:30 because the State's witnesses were not here, are still not all here. State is not ready to go as ordered. The trafficking charge is dismissed.

[Calendar Deputy]: May the record reflect that the assigned prosecutor in that case is not present in the courtroom at this time. I don't know what basis the court is make [sic] its findings on, but the State would like to preserve the fact that it was not party to any conversations concerning what witnesses were here or not here.

.      .      .      .      .

[Calendar Judge]: I checked with the bailiff who told her and he told her.

[Calendar Deputy]: I don't know anything about that, Your Honor.

[Calendar Judge]: I understand. They are still dismissed.

After lunch, when the Trial Deputy returned to the courthouse for the Harris suppression hearing, she was advised that the case had been dismissed. The record reflects that the Trial Deputy immediately went to the calendar courtroom and explained to the Calendar Judge her understanding of the scheduling instructions that had been relayed to her by the bailiff. The Trial Deputy also advised the Calendar Judge that both she and the State's first witness had been in the courthouse, ready to proceed in the Harris' case, since 11:00 a.m., with the State's second witness "on call", ten minutes away. In response, the Calendar Judge stated:

All right. I will do this in light of your explanation. Unfortunately, [Harris' trial attorney] is not now here but his client is in jail in any event.

I will withdraw the dismissal order on this condition; if you agree to pay a fine in the amount of one hundred dollars for

violating a Court Order and the costs of the jury selection.

The Trial Deputy respectfully declined to pay the fine. The Calendar Judge refused to withdraw the dismissal. The State filed this appeal.

### Superior Court Authority to Dismiss An Inherent Power

■■■ The authority of the Superior Court to dismiss a cause of action for failure to prosecute, or to comply with its rules or orders, is well established. *Gebhart v. Ernest DiSabatino & Sons, Inc.,* Del.Supr., 264 A.2d 157, 159 (1970). The Superior Court's "power to dismiss an action has its origins in the common law judgments of non-suit and *non prosequitur." Id.* It is an inherent power of the trial court, which is concomitant to the control vested in a trial court, to manage its affairs and to achieve the orderly disposition of its business. *Id. See State v. McElroy,* Del.Supr., 561 A.2d 154 (1989). *See also Cebenka v. Upjohn Co.,* Del. Supr., 559 A.2d 1219, 1225 (1989) and *Wahle v. Medical Center of Delaware,* Del. Supr., 559 A.2d 1228, 1233 (1989). The question presented by this appeal is whether the action taken by the Calendar Judge was within the realm of sound judicial discretion vested in the Superior Court, pursuant to its inherent powers.

Superior Court Criminal Rule 48(b) is a "codification of the inherent power of a court to dismiss for want of prosecution." *State v. McElroy,* 561 A.2d at 156 (quoting *State v. Fischer,* 285 A.2d 417, 418–19 (1971)). However, Rule 48 has been recognized by this Court as serving a broader purpose than guaranteeing a defendant's constitutional rights to a speedy trial. *Id.* Therefore, this Court's jurisprudence with respect to Superior Court Criminal Rule 48 is instructive in the present matter. In construing Rule 48(b), this Court has stated:

> We hold that for a criminal indictment to be dismissed under Rule 48 for "unnecessary delay," the delay, unless extraordinary, i.e., of constitutional dimensions, must, as a general rule, first be attributable to the prosecution and second, such

delay must be established to have had "a prejudicial effect upon defendant" beyond that normally associated with a criminal justice system necessarily strained by a burgeoning case load.

*State v. McElroy,* 561 A.2d at 155–56.

■■■ The first criteria for dismissal under Rule 48(b), is that the unnecessary delay must be attributable to the State, as prosecutor. *State v. McElroy,* 561 A.2d at 156. The failure to produce witnesses necessary for the proceedings, for example, is normally a delay attributable to the State, as prosecutor. *See State v. Glaindez,* Del. Supr., 346 A.2d 156 (1975). *Compare Hughey v. State,* Del.Supr., 522 A.2d 335 (1987). In Harris' case, the Trial Deputy and the State's first witness were present in the courthouse at 11:30 a.m. and ready to proceed. The decision by the Trial Judge to recess for lunch, which in turn caused a delay of 1½ hours in the commencement of Harris' suppression hearing, is not a delay that can be attributed to the State, as prosecutor. *State v. McElroy,* 561 A.2d at 157.

The second criteria established by this Court, as a condition precedent to a dismissal for unnecessary delay, requires a finding that "the delay has been found to work some definable or measurable prejudice to the defendant." *State v. McElroy,* 561 A.2d at 157. The record reflects that Harris suffered no prejudice from the delay caused by the trial judge's decision to recess at 12:00 p.m., for lunch, until 1:30 p.m. Indeed, Harris' attorney expressly acknowledged on the record that "there is no prejudice to him."

### This Dismissal Abuse of Discretion

It appears that the Calendar Judge dismissed the Indictment against Harris as a sanction for what he perceived to be a failing on the part of the Trial Deputy to comply with a scheduling order. *If* a prosecutor has, in fact, engaged in misconduct, the United States Supreme Court has directed courts to impose a sanction, such as a reprimand, disciplinary referral, or contempt, which focuses "on the culpable indi-

vidual rather than granting a windfall to the unprejudiced defendant." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 263, 108 S.Ct. 2369, 2378, 101 L.Ed.2d 228 (1988). *See* Super.Ct.Crim.R. 42 and Del. Judges' Code of Judicial Conduct Canon 3 B(3). Consequently, the United States Supreme Court has held that, in a criminal proceeding, the ultimate sanction of dismissal, in the absence of any prejudice to the defendant, is an inappropriate remedy for improper actions by a prosecutor. *Bank of Nova Scotia v. United States,* 487 U.S. at 263, 108 S.Ct. at 2378. Similarly, this Court has consistently confined its affirmance of the dismissal of a prosecution by the trial courts to those cases in which the culpable conduct precipitating the dismissal was attributable to the State, as prosecutor, and found "to work some definable or measurable prejudice to the defendant." *State v. McElroy,* 561 A.2d at 157.

We recognize the difficulties which the judges of our trial courts confront daily in the scheduling of cases in overburdened dockets. The defendant's right to a speedy trial is constitutionally compelled but the State, and the community it represents, has an important stake in criminal proceedings. In scheduling, as in other aspects of the trial process, the trial judge is responsible "for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice." *ABA Standards For Criminal Justice,* Special Functions of the Trial Judge, § 6–1.1(a).

In Harris' case, the record reflects that the Trial Deputy acted in a reasonable way in an effort to comply with, not defy, the scheduling instructions conveyed by the bailiff. The record also reflects that the conduct of the Trial Deputy did not cause Harris any prejudice or delay. *A fortiori,* the Superior Court abused its discretion in *sua sponte* dismissing the Indictment. *State v. McElroy,* 561 A.2d at 157; *Bank of Nova Scotia v. United States,* 487 U.S. at 263, 108 S.Ct. at 2378.

### Conclusion

The judgment of the Superior Court is REVERSED. This matter is remanded with directions to reinstate the Indictment against Harris. The mandate shall issue forthwith.