TRAYNOR, Justice, dissenting: I respectfully dissent. In my view, the delay between Hazelton’s arraignment in the Court of Common Pleas and the return of the Rule 9 summons and warrant in the Superior Court nearly four months later was. both unnecessary and attributable to the prosecution’s, conduct. As such, Hazel-ton properly invoked Rule 48(b),and, under the circumstances, the trial judge acted within the bounds of his discretion in dismissing the indictment. Here, the delay between the time Hazel-ton appeared in the > Court of Common Pleas ■ on May 18 to enter his not-guilty plea and demand a -.jury trial, and the .morning of September 14 when he appeared for -that trial only to be unceremoniously arrested and told, that his case was back at “square one” in the Superior Court, if not- unreasonable, was patently unnecessary. And it seems evident to- me that this four-month delay was attributable to the State’s decision to forgo the common courtesy of a call to Hazelton’s lawyer once they decided to move Hazelton’s prosecution to the Superior Court. The State’s failure in that regard, rightly condemned by the majority, deprived Hazelton of the ability to move his case forward expeditiously in the Superior Court by answering the Rule 9 summons,. We told the State more than forty years ago that when “a case in a lower Court is nolle prossed by the Attorney General, with intent to seek an indictment and prosecution in the Superior Court later, ,,. fairness requires that the defendant be notified by the Attorney General that the prosecution still-lives.”[36] No less should be expected when the State decides to move a prosecution that'is underway, with motions pending and a trial date set, and yet the majority believes that the Superior Court was out of bounds to sanction the State’s behavior. The majority’s suggestion that the State’s failure to file a criminal information in the Court of Common Pleas mitigated the effect of the delay — implying that the State did not really prosecute Hazelton in that Court — rings hollow. Hazelton was brought before the Court of Common Pleas’for an arraignment where hé was called upon to plead to the charges. The State was represented by the Department of Justice at that arraignment. Hazelton, acting through a bail-bondsman, posted a $3,800 in cash in the Court of Common Pleas to secure his release, and his lawyer was active in his defense in that Court. And when the State finally realized that Hazelton had cases pending in both courts, it filed a Notice of Nolle Prosequi in the Court of Common Pleas, which under Rule 48(a) is the method for terminating a prosecution by information. In light of these facts, regardless of whether the Department of Justice had “commit[ted]”[37] to prosecuting the case in the Court of Common Pleas, it most certainly must have felt to Hazelton as though he was being prosecuted there.[38] The majority also seems to miss that the harm this incident caused to Hazelton is precisely the type of prejudice this Court has previously recognized as sufficient to justify dismissal under Rule 48(b). It appears that the only consideration the majority gives to the prejudice that Hazelton suffered is a single, conclusory sentence: “Hazelton cannot demonstrate - any definar ble or measurable prejudice.”[39] But this Court long ago recognized that Rule 48(b) does not require a showing of “prejudice in the traditional sense,”[40] like the “death or disappearance of witnesses, loss of evidence, loss of counsel, or other denial of opportunity to prepare for trial.” [41] Other, subtler types of prejudice are sufficient to justify dismissal under Rule 48(b), including “the anxieties suffered by a defendant as a result of a delay and uncertainty in duplicative prosecutions against him” and “the expenses, legal and otherwise, attendant upon a subsequent renewal in another court of a dismissed prosecution.”[42] The majority is simply silent as to why the unnecessary and embarrassing courthouse arrest of the defen-dani^-when he believed that he was there that day for his trial to begin — the pen-dency of duplicative prosecutions and the incurring of additional expenses — all pres-, ent here — are not precisely that type of prejudice. This is a defendant who went to court on September 14, seventeen weeks after demanding a jury trial in the Court of Common Pleas, believing that the proceedings against him were coming to an end, only to be arrested, and taken before another judge of a different court, so that the proceedings against him would begin anew. Because I find that the prosecution’s conduct resulted in a delay that was unnecessary and prejudicial, I would not disturb the Superior Court’s exercise of discretion. It is evident that if the majority had been sitting in the trial judge’s place, they would not have deployed the sanction of a Rule 48(b) dismissal in this case. But our role is not to peer over the trial judge’s shoulder and examine the exercise of this power de novo; we ask only whether invoking Rule 48(b) was an abuse of discretion. And there is good reason for that deferential standard of review. Insulated as we are from our trial judges’ courtrooms, we should be reluctant to second-guess how they manage their cases— and police their litigants. “We have long held that the Superior Court has broad discretion concerning trial management issues, and, in particular, the consideration of motions to dismiss under Super. Ct. Crim. R. 48(b).”[43] This discretion is essential to safeguarding the Superior Court’s “inherent power ... to manage its affairs and to achieve the orderly disposition of its business.”[44] Whether I or any of the other members of this Court would have invoked Rule 48(b), I find no fault in the trial judge’s choice to exercise that power under the facts of this case. . State v. Hoffstein, 315 A.2d 594, 596. (Del. 1974). . Op. at 1151n.29. . To be clear, I do not mean to suggest that the State was precluded from electing to prosecute Hazelton in the Superior Court, Instead, my references to the prosecution activity in the Court of Common Pleas support my conclusion that Hazelton was subject to simultaneous prosecutions in two different courts for the same charges. . Id. at 1151-52. . State v. Budd Metal Co., 447 A.2d 1186, 1188 (Del. 1982). . State v. Fischer, 285 A.2d 417, 419 (Del. 1971). . Id. . Hawkins v. State, 792 A.2d 189, 2002 WL 384436, at *2 (Del. 2002) (unpublished table decision). . State v. Harris, 616 A.2d 288, 291 (Del. 1992); see also Fischer, 285 A.2d at 420-21 (recognizing that Rule 48(b) is "a proper means of intervention by the Superior Court over the 'transfer’ of cases having the foregoing results” and that "Rule 48(b) is a codification of the inherent power of the court to dismiss a case for want of prosecution”).