# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE TOWN OF CAMDEN, a )
Municipal corporation of the )
State of Delaware, )
                              )
                              )    C.A. No. K18J-03097 NEP
           Plaintiff, )    In and for Kent County
                              )
     v. )
                              )
JAMES EDWARD GOLDSMITH, II, )
                              )
          Defendant. )
                              )

Submitted: September 25, 2019
Decided: November 20, 2019

## ORDER

### *Upon Defendants' Motion to Set Aside the Monition Sale*
### DENIED

On this the 20th day of November, 2019, having considered Defendant James Goldsmith's (hereinafter "Mr. Goldsmith") Motion to Set Aside the Monition Sale and the Town of Camden's (hereinafter "the Town") Response; the evidence, testimony, and arguments of the parties presented at the hearing held on September 11, 2019; and the supplemental letters filed by the parties on September 25, 2019, Defendant's Motion is **DENIED**.

## I.   Factual Background

Mr. Goldsmith purchased his home at 404 Commons Lane in Camden, Delaware (hereinafter "the Property") in 1985. On October 16, 2018, the Sheriff of Kent County (hereinafter "the Sheriff") posted a Monition Notice declaring that Mr. Goldsmith owed $2,383.07 in taxes to the Town and $150.00 in monition costs. On December 27, 2018, the Sheriff posted notice that a monition sale of the property

would occur on January 29, 2019. Mr. Goldsmith did not contact the Town between the time of receiving the Monition Notice and receiving notice of the sale.

On January 15, 2019, Mr. Goldsmith's wife, Sherri Goldsmith (hereinafter "Mrs. Goldsmith")[1], spoke on the telephone with the Town's attorney, William W. Pepper, Sr., Esquire (hereinafter "Mr. Pepper"). Mr. Pepper informed Mrs. Goldsmith of the amount that Mr. Goldsmith would have to pay the Town in order to stop the monition sale. At no point did Mr. Pepper tell Mrs. Goldsmith that the sale had been cancelled.[2]

On January 25, 2019, Mrs. Goldsmith proceeded to the Town office and submitted a cashier's check, payable to "The Town of Camden," in the amount of $2,383.07, to the Town's Clerk, Jamie Fenske (hereinafter "Ms. Fenske"). Mrs. Goldsmith also provided a $212.00 cash payment to the Town. Mrs. Goldsmith testified at the hearing that after she submitted these payments to Ms. Fenske, Ms. Fenske called Mr. Pepper and put him on speakerphone and that Mr. Pepper stated that the house would not be sold. Ms. Fenske testified that she informed Mrs. Goldsmith that Mr. Goldsmith still owed money to the Town, and that at no point did she tell Mrs. Goldsmith that the sale had been cancelled.

On January 25, 2019, Ms. Fenske sent an e-mail to "pitpen68@hotmail.com," directing the recipient to "see attached."[3] The e-mail attachment was a copy of the Monition Vendex.[4] On January 28, 2019, Ms. Fenske forwarded the January 25 e-

---

[1] At the hearing on September 11, 2019, Mrs. Goldsmith testified that she is responsible for paying household bills.

[2] The facts are disputed as to whether Mr. Pepper told Mrs. Goldsmith at some point prior to January 29 that the sale had been cancelled. As explained later in this order, the Court finds credible Mr. Pepper's testimony that he did not tell Mrs. Goldsmith that the sale had been cancelled.

[3] Ms. Fenske sent the e-mail to this address because she mistakenly believed that Mrs. Goldsmith used it as her e-mail address.

[4] E-mail from Jamie Fenske to "pitpen68@hotmail.com" (Jan. 25, 2019, 10:52 EST) (contained in Pl.'s Ex. 1). At the hearing on September 11, 2019, Ms. Fenske testified that the Monition Vendex contained an itemization of how much money Mr. Goldsmith owed to the Town.

mail to Mrs. Goldsmith, because the first e-mail had been sent to "an old email."[5] Mrs. Goldsmith replied that she was "working on coming up with the difference. Who do I need to make the bank check out to?"[6] On January 30, 2019, Mrs. Goldsmith e-mailed Ms. Fenske to inquire as to whether there was a "drop box" in which she could place her payment.[7] On February 1, 2019, Ms. Fenske e-mailed Mrs. Goldsmith, telling her that she should contact the Sheriff because Mr. Goldsmith owed "additional fees."[8] At no point during the e-mail exchange did Ms. Fenske indicate that the sale had been cancelled, nor did Mrs. Goldsmith question whether the sale was scheduled to proceed. Furthermore, Mrs. Goldsmith testified at the hearing that she did not pay the outstanding fees prior to the sale because she had "other things going on" and she "forgot."

On January 25, 2019, at 5:11 p.m., Frances Gauthier, Esquire (hereinafter "Ms. Gauthier"), of the Legal Services Corporation of Delaware e-mailed Mr. Pepper informing him that her office was representing Mr. and Mrs. Goldsmith.[9] Ms. Gauthier indicated that she was aware that her purported clients had paid the outstanding taxes earlier that day, and asked Mr. Pepper to remove the Property from the January 29 Sheriff's sale list and give Mr. and Mrs. Goldsmith more time to pay the additional fees, which Ms. Gauthier believed to be $150.[10] On January 28, Mr. Pepper responded that he had "passed [her] request along" to the Town and attached a copy of the Monition Vendex, informing her that "[t]he vendex is attached" showing the "actual amount now owed."[11] Shortly thereafter, Mrs. Gauthier asked whether "the execution costs" were Sheriff's fees, and if there was a "reduction in

---

[5] *Id.*, e-mail from Jamie Fenske to Sherri Goldsmith (Jan. 28, 2019, 8:32 EST).
[6] *Id.*, e-mail from Sherri Goldsmith to Jamie Fenske (Jan. 28, 2019, 9:57 EST).
[7] *Id.*, e-mail from Sherri Goldsmith to Jamie Fenske (Jan. 30, 2019, 10:45 EST).
[8] *Id.*, e-mail from Jamie Fenske to Sherri Goldsmith (Feb. 1, 2019, 9:45 EST).
[9] E-mail from Frances Gauthier to William Pepper, Sr., (Jan. 25, 2019, 17:11 EST) (contained in Pl.'s Ex. 3).
[10] *Id.*
[11] *Id.*, e-mail from William Pepper, Sr., to Frances Gauthier (Jan. 28, 2019, 9:08 EST).

3

execution costs if the sale [were] cancelled."[12] Later that day, Mr. Pepper wrote that the Town was "moving forward with the sale.[13] However, based on communications between Ms. Fenske and Mrs. Goldsmith, "it seem[ed]" to Mr. Pepper that the matter would "be resolved before the sale." [14] Mr. Pepper never wrote that the sale was cancelled, nor did Ms. Gauthier indicate that she thought it had been cancelled.

On January 29, 2019, the Sheriff's sale took place, and DB Capital Investments, LLC, purchased the Property for $60,000. The sale was confirmed on February 22, 2019, and the right of redemption expired on April 23, 2019. Mr. Goldsmith did not redeem the Property. The deed was recorded on May 24, 2019.

## II. Discussion

In a case where a property owner is attempting to set aside a monition sale, the reviewing court will "only consider challenges that strike at the heart of the [c]ourt's jurisdiction in the first instance."[15] Upon review, the court must balance the constitutional principles of due process and fundamental fairness with the purpose of confirmation, which is to provide the purchaser with assurance of absolute title to the property.[16] The party seeking to set aside the monition sale bears the burden of establishing a basis for relief.[17]

### A. The Court Rejects Mr. Goldsmith's Arguments of Misrepresentation and Inadequate Sale Price.

Mr. Goldsmith argues in his Motion that the "misrepresentation and misconduct" of Mr. Pepper and Ms. Fenske led him to believe that the monition sale had been cancelled, and that it was for this reason that he failed to pay the amount he owed to the Town.[18] However, the evidence does not support this proposition.

---

[12] *Id.*, e-mail from Frances Gauthier to William Pepper, Sr. (Jan. 28, 2019, 9:14 EST).
[13] *Id.*, e-mail from William Pepper, Sr., to Frances Gauthier (Jan. 28, 2019, 13:34 EST).
[14] *Id.*
[15] *New Castle County v. Gallen*, 2003 WL 21739069, at *3 (Del. Super. May 27, 2003).
[16] *Id.*
[17] *Id.*
[18] Goldsmith Mot. to Set Aside Monition Sale, ¶ 19, July 9, 2019.

4

Indeed, the conduct of the Goldsmiths themselves demonstrated that the sale had not been cancelled.

Mr. Pepper and Ms. Fenske testified that they never told Mr. or Mrs. Goldsmith that the Monition Sale had been cancelled, and the Court finds their testimony credible. Additionally, in the e-mail exchange between Ms. Fenske and Mrs. Goldsmith, Mrs. Goldsmith was notified of the outstanding balance and made indications that she wished to pay it.[19] Further, in the e-mail exchange between Mr. Pepper and Ms. Gauthier, Mr. Pepper provided the Monition Vendex and told Ms. Gauthier on January 28 that the Town was "moving forward with the sale."[20] If Ms. Gauthier was acting as the attorney for Mr. and Mrs. Goldsmith, her knowledge that the sale had not been cancelled was imputed to her clients.[21] However, even if Ms. Gauthier was not acting as the Goldsmiths' attorney, Mr. Goldsmith has failed to explain to the Court why Ms. Gauthier, after being informed by Mrs. Goldsmith that she (Mrs. Goldsmith) had made the January 25 payment, would be asking Mr. Pepper to cancel the sale *if Mr. Pepper and Ms. Fenske had informed Mrs. Goldsmith at the time she made the payment that the sale had been cancelled.*[22]

Mr. Goldsmith also argues that the monition sale should be set aside because the Property sold for an amount far less than its worth. However, Mr. Goldsmith failed to provide competent evidence to support this contention. Furthermore, this

---

[19] E-mail from Sherri Goldsmith, to Jamie Fenske (Jan. 28, 2019, 9:57 EST) ("Who do I need to make the bank check out to?").

[20] E-mail from William Pepper, Sr., to Frances Gauthier (Jan. 28, 2019, 13:34 EST).

[21] Mr. Goldsmith testified on cross-examination at the hearing, without objection from his counsel, that Mrs. Goldsmith had informed him that she had consulted with a legal aid attorney. *See Gebhart v. Ernest DiSabatino & Sons, Inc.*, 264 A.2d 157, 160 (Del. 1994) ("each party must be deemed bound by the acts of his lawyer-agent"); *cf. In re American Intern. Group, Inc.*, 965 A.2d 763, 806 (Del. Ch. 2009) ("the knowledge of an agent is normally imputed to the agent's principal").

[22] In her e-mail to Mr. Pepper sent at 5:11 p.m. on January 25, 2019, Ms. Gauthier stated, "I understand that my clients have already tendered the $2,382.07 tax fee. I am writing to request that this action be removed from the 1/29 Sheriff sale list." (Pl.'s Ex. 3).

5

argument was raised after the sale was confirmed.[23] Therefore, this argument is rejected.

### B. The Court Rejects Mr. Goldsmith's Supplemental Argument of Insufficient Notice.

Mr. Goldsmith argues in his supplemental submission that he should have received a new notice that the sale was scheduled to proceed once he paid all fees listed in the Monition Notice. Mr. Goldsmith supports this contention by citing the portion of the Monition Notice that states that the Town "'may proceed to sell the property . . . for the purpose of collecting the judgment for the taxes or assessments herein stated.'"[24] Mr. Goldsmith concludes that his payment satisfied the purpose of the Monition Notice because he paid all costs listed therein, and thus the sale of the Property was not for the purpose of satisfying the amount originally owed. Therefore, Mr. Goldsmith concludes that he should have received a new notice that the sale was scheduled to proceed over fees incurred that were not listed in the original notice.

However, Mr. Goldsmith's argument is unpersuasive because it fails to consider the entire Monition Notice, the language of which must be read in context. The body of the Monition Notice states, in full:

> To all persons having or claiming to have any title, interest, or lien upon the within described premises, take warning that *unless the judgments for the taxes or assessment stated herein is paid within twenty days after the date hereof* or within such period of twenty days, evidence of the payment of the taxes herein claimed shall be filed in the office of the Prothonotary for Kent County, Delaware, which evidence shall be in the form of a

---

[23] *Gallen*, 2003 WL 21739069, at *1 ("because the sale has been confirmed (without objection) [the parties seeking to set aside the sale] cannot be heard to argue that the price paid for the [p]roperty was inadequate"), *5 (challenge to adequacy of sale price raised after confirmation "comes too late in the process").

[24] Goldsmith Suppl. Submission, at 2, September 25, 2019 (quoting monition notice) (emphasis removed).

6

> receipted tax bill or duplicate thereof, bearing date prior to the filling [sic] of the lien in the office of the Prothonotary for Kent County, *the Collector of Taxes of the Town of Camden may proceed to sell the property herein mentioned or described for the purpose of collecting the judgment for the taxes or assessments herein stated.*[25]

Therefore, Mr. Goldsmith had twenty days from the date the Monition Notice was posted (October 16, 2018) to pay his outstanding taxes and $150.00 in monition costs. If he failed to do so, then other costs would necessarily be incurred as the Town moved to complete the monition sale. It is undisputed that Mr. Goldsmith failed to make the required payments within twenty days of the posting of the Monition Notice. Mr. Goldsmith was not entitled to a new notice after making the $2,383.07 and $212.00 payments because, as explained *supra*, Mr. Goldsmith knew that other fees remained unpaid and that the Property was still for sale.

Additionally, Mr. Goldsmith's supplemental argument, if accepted, would undermine Delaware's monition sale system. The Town has fiscal requirements and collects taxes to meet its budget. As the Town proceeds to sale to recoup costs from unpaid taxes, it necessarily incurs costs to complete the sale. If the municipality were required to post an additional notice and stop the sale every time it received a partial payment, it would be caught in a cycle wherein a property owner, delinquent on his or her taxes, could wait until the day before sale to post a partial payment, and the property owner could repeat this process to buy time and continually postpone the sale. Here, the Delaware monition sale system yields ample opportunity for the property owner to retain his or her home, and also allows the municipality to meet its financial obligations.

If this Court were to accept Mr. Goldsmith's argument, then it would fail to provide the purchaser, DB Capital Investments, with assurance of absolute title to

---

[25] Monition Notice (emphasis supplied).

the property – a clear requirement under Delaware law.[26] Here, Mr. Goldsmith's argument is rejected because "the process must be protected. Otherwise, nothing is final."[27]

### III. Conclusion

As this Court recognized in *Gallen*, where, as here, a Sheriff's sale is challenged for the first time after confirmation, "the court must balance the good faith purchaser's right to finality in the process against the property owner's (and the public's) interest in ensuring that procedural safeguards have been employed properly."[28] In this case, the Town properly employed procedural safeguards, including applicable notice requirements, and there was no fraud surrounding the sale. Specifically, Mr. Goldsmith was afforded ample time to pay his taxes along with additional costs incurred by the Town, and was given sufficient notice of the sale – and the Goldsmiths were never informed that the sale would be canceled. Therefore, there is no basis for this Court to overturn the sale.

The decision to overturn a Sheriff's sale "rests in the sound discretion of the court."[29] Nonetheless, overturning the sale in this case would represent an abuse of discretion, where all procedural requirements have been followed and no competent evidence was presented regarding inadequacy of price (and furthermore the latter issue was raised too late, *i.e.*, after confirmation). Certainly the Court is not without sympathy for Mr. Goldsmith, a disabled veteran threatened with the loss of his home as a result of the sale. However, to overturn the Sheriff's sale out of sympathy for Mr. Goldsmith would do violence to the principles that veterans like him have fought to preserve – principles that are grounded, first and foremost, in a respect for the rule of law. The Town and the citizens it represents are also entitled to the confidence

---

[26] *Gallen*, 2003 WL 21739069, at *3 ("the primary purpose of confirmation is to provide the good faith purchaser at Sheriff's sale a fixed point in the process 'where he becomes assured of absolute title and the peace attendant thereto'") (quoting *Ward v. Gray*, 374 A.2d 15, 16 (Del. Super. 1977)).
[27] *Dep't of Fin. v. LaRosa Corp.*, 2003 WL 23274836, at *2 (Del. Super. Dec. 17, 2003).
[28] *Gallen*, 2003 WL 21739069, at *5 (citing *Ward*, 374 A.2d at 16).
[29] *Id.* (citing *Burge v. Fidelity Bond and Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994).

that established procedures surrounding the sale of property resulting from nonpayment of taxes will be respected and observed by the judiciary. For this Court to do any less would threaten the freedoms that are the hallmark of our governmental system.

**WHEREFORE**, for the foregoing reasons, Mr. Goldsmith's Motion to Set Aside the Monition Sale is **DENIED**.

**IT IS SO ORDERED.**

/s/ Noel Eason Primos
Judge

NEP/wjs
*Via File & ServeXpress*
oc:    Prothonotary
        Counsel of Record

9