**DIVISION OF FAMILY SERVICES,**
Petitioner,

v.

**A.B., A.W., Thresholds,**
**Inc., Respondents.**

No. CS08–02438.

Family Court of Delaware,
Sussex County.

Submitted: Dec. 8, 2008.
Decided: June 25, 2009.

Kathryn L. Welch, Esquire, Deputy Attorney General, Georgetown, DE, Attorney for the Petitioner.

Ashley M. Oland, Esquire, Law Office Of Edward C. Gill, P.A., Georgetown, DE, Attorney for A.B.

Patricia M. O'Neill, Esquire, Law Office of Patricia M. O'Neill, Georgetown, DE, Attorney for A.W.

Andre Beauregard, Esquire, Brown, Shiels, & O'Brien, L.L.C., Attorney for Thresholds, Inc.

### OPINION

HENRISKSEN, J.

This is the Court's Decision and Order on a Rule to Show Cause petition scheduled *sua sponte* by the Court against Thresholds, Inc. (Thresholds). Thresholds, a private agency providing patients with drug and alcohol treatment, has failed to come to Court on two occasions despite a subpoena *duces tecum* having been served upon it at the request of the attorney representing Mother in a child welfare/dependency action.

### FACTS

Mother's child (Child) was taken from Mother and placed into the custody and care of the Division of Family Services of the State of Delaware shortly after Child's birth, when it was noted that Mother and Child both tested drug positive at the time of Child's birth. There was also an initial determination against Father that would have made Child dependent in Father's care.[1] Mother informed the Court during

---

1. For purposes of this Decision and Order, the Court will concentrate mainly on discussing Mother's situation.

the Preliminary Protective Hearing on July 21, 2008, that she had recently signed up with Thresholds to address possible problems she might be having with substance abuse.[2] For purposes of this Decision, the Court is assuming that Thresholds is an agency covered by and subject to the confidentiality requirements of the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42, U.S.C. § 290dd–2 (2005).

The next scheduled hearing in this matter was to occur on Monday, August 11, 2008. On Thursday, August 07, 2008, Mother's attorney requested that this Court issue a subpoena *duces tecum* to Thresholds to attend the Monday hearing. The subpoena was served on an employee of Thresholds during the late afternoon of Friday, August 08, 2008. Given the considerable lack of timeliness of this subpoena request, the failure of a Thresholds' representative to appear for the hearing is not an issue for the Court, except that it was the first of two occasions, the latter being more serious, when no one from Thresholds appeared in response to the subpoena. Thresholds' attorney, however, sent a courtesy letter to the Court in advance of the hearing objecting to the timeliness of the request, and including a concern that there had been no advance guarantee of payment of expert witness fees.

On July 21, 2008, assumedly while attending the Preliminary Protective Hearing, Mother signed a release form authorizing the release of her records from Thresholds to the Division of Family Services (DFS). Mother's signature appears on a form apparently prepared by DFS.

Although the form specifies certain areas to be provided by certain named mental health providers, the form does not include the types of information being requested from Thresholds.[3] The DFS form of release contained a specific date by which Mother's authorization would no longer be valid. The release also contained language which notified Mother that the confidentiality of her records was protected under federal regulations governing confidentiality of alcohol and drug abuse patient records, 42 C.F.R. Part 2, as well as the Health Insurance Portability and Accountability Act (HIPAA) of 1996 (45 C.F.R. Pts. 160 and 164).

Mother later signed two other releases on August 15, 2008. Both releases appear to be on forms prepared by Thresholds. One of the releases authorized Thresholds to disclose information about Mother's presence in treatment to "Family Court". The release form contained the necessary warnings under the Confidentiality of Alcohol and Drug Abuse Patient Records Act, 42 C.F.R. Part 2, as well as HIPAA. The release indicated that Mother's consent would terminate 90 days past her discharge. Mother's other release, signed on August 15, 2008, authorized the release of her Thresholds' records to her attorney. This form of release contained the same confidentiality warnings and cut-off date as the release Mother signed to the Family Court. Mother's release for her attorney also clearly authorized the release of Mother's results of her screening and assessment, including urine drug screen results, reports of Mother's progress in treatment, including attendance and diagnostic summary, and reports of her dis-

2. The Preliminary Protective Order also reflects concerns about Mother's involvement in relationships of domestic violence and issues of mental health.

3. The failure to specify types of information may have been a defect in the release under federal regulations governing confidentiality of alcohol and drug abuse patient records. *See* Form of Written Consent, 42 CFR § 2.31 (2008).

charge status and any discharge recommendations.

On August 12, 2008, the Attorney Guardian Ad Litem (AGAL) for Child filed a motion, including a Notice of Motion to Thresholds. The AGAL's motion was requesting a Good Cause Order authorizing the release of Mother's Thresholds' records to the AGAL along with a mandate to do so. The Notice of Motion attached to the AGAL's motion notified the parties, as well as Thresholds, that the motion would be presented to the Court for consideration "at the Court's earliest convenience." The AGAL's Notice of Motion did not set a time period in which any of the parties, or Thresholds, could file a response.[4] Unaware of the possible notice deficiencies in the AGAL's motion, noted in footnote number 4, the Court signed an Order on August 13, 2008, acknowledging that good cause had been shown by the AGAL for the disclosure of treatment services provided by Thresholds to Mother. The Court's Order also mandated that Thresholds produce its records regarding evaluation, treatment and discharge of Mother within 20 days to the AGAL and DFS. For reasons that the Court does not understand, and which gives the Court concern, the Order was not mailed until September 03, 2008. Again for reasons that the Court does not understand, it appears that copies of the Order were only sent to the attorney for DFS, the AGAL, and Father's attorney. A copy of the Order was not sent, at least by the Court, to Thresholds or to Mother's attorney.

On August 15, 2008, DFS filed a motion also seeking to have the Court determine that there was good cause to direct Thresholds to release Mother's records and to mandate the release of those records. Although the DFS motion, in paragraph 3, indicated that DFS had not received from Mother a release sufficient for the disclosure of the information to DFS, which may be correct due to a deficiency identified in footnote 3, Mother had in fact signed a form of release, perhaps not adequate, to DFS on July 21, 2008. The DFS motion was accompanied by a Notice of Motion to all parties, as well as certain other agencies, including Thresholds. The DFS Notice of Motion specifically indicated "If you are opposed to this motion, you must file a written response with the Court within 10 days of the service of this motion. If no response is timely filed, the motion may be decided without further opportunity to be heard on the matter." Given that the Court had already signed the prior Order to the AGAL's motion on August 13, 2008, which included authorizing the release of information also to DFS, it is likely that the Court did not sign any additional Order as to this particular DFS motion.

Contained in the legal memorandum filed by the AGAL, the Court learned that the AGAL forwarded a copy of the August 13th Order to Thresholds on September 03, 2008, along with a request that Thresholds forward to the AGAL the Court ordered documents. Thresholds' director, Bruce Lorenz, responded with an original letter to the Court and a copy to the AGAL, which indicated, in pertinent part, that Thresholds would comply with the Order [releasing records] since it met the requirements outlined in the Federal Con-

---

4. Given that Mother had not signed a release authorizing Thresholds to disclose information to the AGAL, there may have been several deficiencies in this filing under 42 C.F.R. Part 2 Subpart D, regarding disclosures without patient consent. Subpart E, § 264, requires adequate notice and an opportunity to respond in writing, or to appear in person. Any hearing on the review of the evidence is to be held in Judge's chambers or in some manner which ensures that patient identifying information is not disclosed to anyone other than a party to the proceeding, the patient, or the person holding the record.

fidentiality statute. Unfortunately, the AGAL's memorandum goes on to indicate that the AGAL did not receive the Court ordered records from Thresholds within 20 days from the date of the Order, which the AGAL interpreted to be the mailing date of September 03, 2008. Having received no response from Thresholds, the AGAL had to make an additional effort to contact Thresholds during the first week of October, 2008, to set up a meeting with Director Lorenz to discuss the reasons for Thresholds' delay in releasing the documents to the AGAL. That meeting did not occur until October 23, 2008, three days after the Adjudicatory Hearing in the dependency case.

Last, but not least, and coming to the very crux of the issue of this Decision, this Court issued a subpoena *duces tecum* at Mother's attorney's request for a representative from Thresholds to appear and bring records with him or her at the Adjudicatory Dependency Hearing scheduled October 20, 2008. The subpoena was served on Thresholds' worker Sue Harris on August 13, 2008, more than two months in advance of the Adjudicatory Hearing. Recall that Mother had executed an appropriate release to her attorney for these records on August 15, 2008. Despite the appropriately executed release signed by Mother to her attorney, and despite the Order issued by this Court on August 13, 2008, requiring Thresholds to disclose its records to the AGAL and to DFS within 20 days, neither Mother's attorney, the AGAL, nor DFS had these records in time for the Adjudicatory Hearing on October 20, 2008. Furthermore, the Thresholds' representative failed to appear at the Adjudicatory Hearing. Even more, at no time did Thresholds file any objection with the Court to the issuance of its Order of

August 13, 2008, nor did it attempt to quash the subpoena *duces tecum* requested by Mother's attorney and served on Thresholds on August 13, 2008.

Director Lorenz's letter of September 12, 2008, also appeared to suggest to the Court reasons why Thresholds should be extended special accommodations in attending Court hearings. Director Lorenz pointed out that "Thresholds, Inc. is a private program that provides treatment to persons who have difficulties with chemical dependency and related mental health issues." [5] Director Lorenz went on to remind the Court that Thresholds is a busy agency run on limited funding. He suggested that the Court appearance of Thresholds' employees could have a "deleterious" effect on the program. Director Lorenz reminded this Judge of the fee for copying the rather extensive client records maintained by Thresholds, and that the fee for one of its representatives to appear for a hearing was $75.00 per hour for a four hour minimum, and that all fees must be paid in advance. Director Lorenz concluded his letter by noting that "We would be interested in making an arrangement that would manage to *accommodate* both the Court's mission and ours." (Emphasis added.)

At the Rule to Show Cause Hearing, Thresholds' attorney first indicated that the subpoena had been lost or misplaced, or perhaps it was never served. Sue Harris of Thresholds, however, acknowledged that she had received the subpoena but may have misplaced it. She also indicated that she was confused. She indicated that she failed to distinguish between Mother's attorney and the AGAL, believing that Mother's attorney worked for the Office of the Child Advocate. Ms. Harris, in a fol-

---

5. The Court is not sure that this representation alone qualifies Thresholds, Inc. and patients for the protections afforded under the

Confidentiality of Alcohol and Drug Abuse Patients Records Act, 42 C.F.R. § 2.1, *et seq.* (2008).

low-up affidavit, stated that she had believed, mistakenly, that the scheduling of her meeting with the AGAL on October 23, 2008, relieved her from appearing at the Court hearing on October 20, 2008.

The consequence of the lack of attention to detail by Thresholds personnel was that the Court was not in the position to consider Mother's request for increased visitation with her child.[6]

## ISSUES

Thresholds is requesting that this Court not hold Thresholds in contempt for its failure to appear with its treatment records of Mother at the Adjudicatory Dependency Hearing. The Court understands Thresholds' records concerned treatment it had rendered to Mother for problems of alcohol dependency and drug abuse. Thresholds failed to appear with the records despite this Court having issued a subpoena *duces tecum* requiring its appearance with that information. Thresholds is first asking the Court to look favorably on its request because there "was a misunderstanding, not intentional disobedience" to its response to the Court's subpoena *duces tecum*.

Thresholds' second argument in support of not being held in contempt is that the subpoena did not allow Thresholds reasonable time to comply.

Third, Thresholds argues that confidentiality requirements of Title 42 of the Code of Federal Regulation regarding the treatment of alcohol and drug abuse patients were not complied with by the Court and/or the requestors of the information, despite Mother's execution of a release of information on Thresholds' form detailing the specific information for release. Mother executed her release of records more than two months prior to the October 20th hearing. Likewise, the subpoena *duces tecum* was served upon Thresholds more than two months prior to the hearing.

Finally, Thresholds seems to argue that it should not be compelled to attend Court hearings to supply information until easier and more convenient methods of exchange are considered by the Court, and also not before Thresholds receives compensation, in advance, for its attendance at Court.

## LAW AND REASONING

■■■ Turning to the first issue, it is clear that Thresholds was appropriately served on August 13, 2008, with a subpoena *duces tecum* requiring its attendance at Court more than two months later, on October 20, 2008. A subpoena is not an invitation to attend. It is a command to appear. Pursuant to Family Court Civil Rule 45(f), failure by any person without adequate excuse to obey a subpoena served upon the person may be deemed a contempt. The Family Court has not only the statutory authority via Del.Code Ann. tit. 10, § 925(3), but also the inherent authority to punish contempt when a finding is made.[7] Where the Court is acting principally to provide a remedy for an injured party and to coerce compliance with the Order the contempt is civil in nature.[8] Furthermore, in a civil contempt proceeding, it is not a defense that the party in contempt did not have subjective intent to violate the Court's Order.[9] Justice Douglas, in delivering the opinion of the United States Supreme Court in *McComb v. Jack-*

---

6. See page 3 of dependency Adjudicatory Order dated October 20, 2008.

7. *See United Mine Workers v. Bagwell*, 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

8. *Dep't of Servs. for Children Youth and Their Families v. Cedars Acad.*, 1989 WL 134868 (Del.Ch.).

9. *Id; see also Watson v. Givens*, 758 A.2d 510 (Del.Fam.Ct.1999).

*sonville Paper Co.,* stated, "the absence of willfulness does not relieve from civil contempt."[10] Justice Douglas further stated in that Opinion, "An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently."[11]

As far back as 1899, the Court of Chancery of the State of Delaware in *Wilds v. Wilds, et.al.,* recognized the "inherent power of the Court to regulate its practice according to well-defined and authoritative precedents."[12] Again in 1948, Judge Layton, writing for the Superior Court of the State of Delaware in the case of *In re: Denning, et.al.* stated "A Court always has inherent power over its own process and, in a proper case, may vacate or quash writs, returns, or other process incorrectly or improvidently issued."[13]

Even more recently in 2003, Judge Slights, writing for the Superior Court of the State of Delaware in the case of *State v. Wright,* again discussed the inherent authority of the Court. The Attorney General's Office of the State of Delaware averred that the Superior Court was without authority to order the production of discovery, including a report from the Office of the Medical Examiner, by a date certain in advance of a criminal trial.[14] Judge Slights noted that the actions of the Attorney General's Office in delaying disclosure of the Medical Examiner's report hindered a defendant's ability to intelligently weigh the benefits of a plea offer against the risk of proceeding to trial.

Judge Slights said the position of the Attorney General, "reduced the case review process to a meaningless exercise and unfortunate waste of precious (and scant) resources."[15] Judge Slights acknowledged that there was no specific rule which required the Attorney General to complete and disclose the Medical Examiner's report by a date certain in advance of a criminal trial. However, invoking the inherent power of the Court to manage its affairs, achieve the orderly disposition of its business, and preserve the existence and dignity of the Court, Judge Slights found the State in contempt of the Court's Orders and sanctioned the State by precluding them at trial from introducing any evidence and/or opinions from the Office of the Medical Examiner.[16]

Even more recently, Delaware Court of Common Pleas Judge Clark, in the case of *State v. Walker,* again relied upon the inherent power of the Court to regulate discovery in order to "manage the affairs of the Court and to achieve the orderly disposition of cases".[17]

In answer to Thresholds' first defense, therefore, the alleged inadvertent lack of attention and misunderstanding excuse given by Thresholds to the subpoena of this Court does not relieve Thresholds from a finding of contempt even though the Court may not have concluded that Thresholds acted with malice or in bad faith.

**10.** *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

**11.** *Id.*

**12.** *Wilds v. Wilds, et al.,* 68 A. 447, 448 (Del. Ch.1899).

**13.** *In re: Denning, et al.,* 61 A.2d 657, 658 (Del.Super.1948).

**14.** *State v. Wright,* 821 A.2d 330 (Del.Super.2003).

**15.** *Id.* at 334.

**16.** *Id.*

**17.** *State v. Walker,* 2005 WL 1898928, at *2 (Del.Com.Pl.), citing *State v. Wright,* 821 A.2d 330, 333 (Del.Super.2003).

Thresholds' lack of giving appropriate respect and attention to the subpoena of this Court caused a delay and additional problems for the Court, counsel, and the parties, in a case involving a dependent child where federal law requires frequent and timely hearings to promote the safety and permanency of children, and the review of efforts that hopefully will reunite children with their parents.[18] In this particular case, because of Thresholds' carelessness, a mother's hopes of having increased visitation with her young child had to remain unanswered until a later date.

■■ As to Thresholds' second argument, timeliness, the Court would agree that the subpoena *duces tecum* served on Thresholds on the Friday afternoon before the Monday, August 11th hearing did not permit Thresholds a reasonable time to comply. However, the more than two month time period between Thresholds being served with a second subpoena *duces tecum* on August 13, 2008, and the hearing date of October 20, 2008, allotted Thresholds more than reasonable time to comply. Certainly within that time period, Thresholds also had ample time in which to file a motion to quash the subpoena and enter any objections it deemed appropriate.

■ The Court turns now to Thresholds' third argument that the subpoena *duces tecum* issued by the Court at Mother's request for Mother's treatment records from Thresholds was not valid since it did not follow the procedures established in the Drug Abuse Prevention, Treatment and Rehabilitation Act set forth in 42 U.S.C.A. § 290dd–2 and subject to regulations promulgated by the Secretary of Health and Human Services beginning at 42 C.F.R. § 2.61.

The federal law regarding the confidentiality of records, and permissible disclosure pertaining to patients undergoing substance abuse and mental health treatment is found at 42 U.S.C.A. § 290dd–2. Under Subsection (A) the code first explains the protections for patients and the treatment agency where disclosure of a patient's records would demonstrate "the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity related to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States ..."[19]

Subsection (B) of 42 U.S.C.A. § 290dd–2 then sets forth the law which permits disclosure. Subsection (1) states the following:

(1) Consent

The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, *but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section.* (Emphasis added.) Subsection (b)(2) then goes on to state, in part:

(2) Method for disclosure

*Whether or not the patient,* with respect to whom any given record referred to in subsection (a) of this section is maintained, *gives written consent, the content of such record may be disclosed* as follows: (Emphasis added.)

**18.** Adoptions and Safe Families Act of 1997, 42 U.S.C.A. § 671 (1997).

**19.** The Court has written this Decision and Order under the assumption that Thresholds is an agency subject to the confidentiality provisions of this Act.

(A) To medical personnel to the extent necessary to meet a bona fide medical emergency.

(B) To qualified personnel for the purpose of conducting scientific research, management audits, financial audits, or program evaluation, but such personnel may not identify, directly or indirectly, any individual patient in any report of such research, audit, or evaluation, or otherwise disclose patient identities in any manner.

(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause, the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.[20]

When this Judge read the statutory provisions just noted, especially the emphasized portions set forth above, the Court was confused as to whether or not the records of a patient who gives written consent can be released without further procedures, or whether there are additional requirements that must be followed before the agency holding the records can release those records even after a patient has signed a consent authorizing the release of their information. Thus, as one can see from the above wording, subsection (1) Consent, places limitations upon disclosure where a patient has given prior written consent when it states, "but only to such extent, under such circumstances,

and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section." The confusion is compounded when one goes to the next section, subsection (2) Method for disclosure, which might be interpreted to require a court of competent jurisdiction to issue a Good Cause Order "whether or not the patient ... gives written consent ..."

To understand the limitation of releasing records once a patient gives prior written consent, subsection (1) Consent, directs the reader to subsection (g). Basically, subsection (g) permits the Secretary of the Department of Public Health and Welfare to prescribe regulations to "effectuate the purposes of this section, to prevent circumvention or evasion thereof, or to facilitate compliance therewith." [21]

Any confusion that may have occurred in reading the previously noted statutory language gets cleared up, especially as to the questions in the present case, when one turns to a reading of the regulations promulgated by the Secretary. The regulations are set forth in 42 C.F.R. Part 2, concerning the "confidentiality of alcohol and drug abuse patient records." A form of written consent is provided in the regulations beginning in Subpart C—Disclosures with Patient's Consent § 2.31. Basically, the consent form must be in writing, name the program from which records are requested, name the person or entity to which the disclosure is to be made, and name the patient. The consent must also state the purpose of disclosure, how much and what kind of information is to be disclosed, and be signed by the patient and dated when signed. The consent must also contain a statement that the consent is subject to revocation at any time except to the extent the program has already acted in reliance on the consent. The consent must also provide a date or event

---

20. 42 U.S.C.A. § 290dd–2(b) (1998).

21. 42 U.S.C.A. § 290dd–2(g) (1998).

or condition which will cause the consent to expire if not revoked before. The regulations even contain a sample form.[22] By the Court's own inspection of the form executed by Mother in this case to her attorney, a form which appears to have been created by Thresholds, the release signed by Mother to her attorney appears to comply with the required elements in § 2.31 of the regulations.

Any questions about possible limitations to a patient's consent are then cleared up by the language set forth in the regulations at § 2.33, Disclosures permitted with written consent, which reads as follows:

> If a patient consents to a disclosure of his or her records under § 2.31, a program may disclose those records in accordance with that consent to any individual or organization named in the consent, except that disclosures to central registries and in connection with criminal justice referrals must meet the requirements of §§ 2.34 and 2.35, respectively.[23]

The Mother in this case is not asking for her records to be disclosed to a central registry or in connection with a criminal justice referral.

Having gone through the foregoing analysis, it is clear that the consent signed by Mother authorizing Thresholds to release and disclose her records to her attorney satisfied the Regulations, and those records should have been disclosed forthwith. It was not necessary for Mother's attorney to seek a Court order authorizing the disclosure and use of Mother's records.

Once Mother signed her release to her attorney, it would have seemed appropriate to the Court that Thresholds immedi-ately release its records to Mother's attorney even without a subpoena. But if Thresholds had any doubt about its responsibilities before or after being served with the subpoena *duces tecum,* there is no doubt in this Court's mind that Thresholds should have appeared for the hearing on October 20, 2008, when those records were subpoenaed. Any concerns that it might have had about being subjected to penalties under the Federal Confidentiality Act could have been raised by Thresholds at the time its representative appeared at the hearing under subpoena, although it would have been preferable if its attorney had filed a Motion to Quash, setting forth the reasons, shortly after being served with the subpoena and well in advance of the hearing. If anything, the Court could have taken the records into possession, and held them on a secured and private basis until making a determination as to whether or not all or part of those records could be placed into evidence.

In a case somewhat similar to the case *sub judice,* where a subpoena *duces tecum* was served on a witness requiring her to produce certain documents, Georgia Court of Appeals Judge MacIntyre noted that such documents submitted to the court, but subject to a motion to quash or objection, would be held by the court *"In gremio legis"* until the Court could determine whether or not the documents would be admissible into evidence.[24] As Judge MacIntyre noted, *In gremio legis* means "in the bosom of the law, in protection of the law, in abeyance."[25] Judge MacIntyre, noted that, "Constitutional courts have the inherent power to fine and punish contempt, and this authority is not limited by Code".[26] Judge MacIntyre went on to note

---

22. 42 C.F.R. § 2.31 (2009).

23. 42 C.F.R. § 2.33 (2009).

24. *Evans et al. v. State,* 69 Ga.App. 178, 24 S.E.2d 861 (1943).

25. *Id.,* at 862.

26. *Id.*

that, "It is absolutely necessary that a Court should possess this power in order that it may carry on the administration of justice, and preserve order and decorum in the court. As far as we can ascertain, this power has existed since courts were first established. Judge Wilmot, in 1795 [stated] it was as old as the courts themselves." [27]

Although one by now should clearly understand that Mother's attorney, having an appropriate signed release for Mother's records, was not required to make application to the Court for any type of special Good Cause Order which authorized and mandated disclosure, the attorney for Thresholds, in making his third argument in defense of failing to abide by Mother's subpoena *duces tecum*, proceeded to set forth those portions of the regulations that apply to agencies or individuals seeking disclosure of records *other than a patient* and *where the patient has not consented*. (Emphasis added.) Thresholds' attorney failed to make any legitimate argument for failing to respond to Mother's subpoena *duces tecum* where Mother had previously signed an appropriate consent.

Because the AGAL did not obtain a prior written consent from Mother authorizing the release and disclosure of information from Thresholds to the AGAL and may have had notice deficiencies in making the motion for a Good Cause Order, and because there may have been certain technical difficulties in the release Mother executed to DFS, the Court sets forth hereafter the specific regulations which would apply to such individuals as the AGAL and such agencies as DFS when seeking a Good Cause Order from the Court authorizing and mandating disclosure where a patient has not given their written consent. These federal regulations, promulgated by the Secretary for his appropriate enforcement of the statutory requirements of 42 U.S.C.A. § 290dd–2 (b)(2)(C),[28] are set forth in Subpart E of 42 C.F.R., Part 2 of the Confidentiality of Alcohol and Drug Abuse Patients Records Act. The specific procedure, set forth in § 2.64 is entitled "Procedures and criteria for orders authorizing disclosures for noncriminal purposes." This section reads as follows:

(a) *Application.* An order authorizing the disclosure of patient records for purposes other than criminal investigation or prosecution may be applied for by any person having a legally recognized interest in the disclosure which is sought. The application may be filed separately or as part of a pending civil action in which it appears that the patient records are needed to provide evidence. *An application must use a fictitious name*, such as John Doe, to refer to any patient and may not contain or otherwise disclose any patient identifying information unless the patient is the applicant or has given a written consent (meeting the requirements of these regulations) to disclosure *or the court has ordered the record of the proceeding sealed from public scrutiny.* (Emphasis added.)

(b) *Notice.* The patient and the person holding the records from whom disclosure is sought must be given:

---

27. *Evans*, at 863 (citing *Bradley v. State,* 111 Ga. 168, 36 S.E. 630, 630 (1900)).

28. 42 U.S.C.A. § 290dd–2 (b)(2)(**C**) If authorized by an appropriate order of a court· of competent jurisdiction granted after application showing good cause therefore. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

(1) Adequate notice in a manner which will not disclose patient identifying information to other persons; and

(2) An opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on the statutory and regulatory criteria for the issuance of the court order.

(c) *Review of evidence: Conduct of hearing.* Any oral argument, review of evidence, or hearing on the application must be held in the judge's chambers or in some manner which ensures that patient identifying information is not disclosed to anyone other than a party to the proceeding, the patient, or the person holding the record, unless the patient requests an open hearing in a manner which meets the written consent requirements of these regulations. The proceeding may include an examination by the judge of the patient records referred to in the application.

(d) *Criteria for entry of order.* An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

(e) *Content of order.* An order authorizing a disclosure must:

(1) Limit disclosure to those parts of the patient's records which are essential to fulfill the objective of the order;

(2) Limit disclosure to those persons whose need for information is the basis for the order; and

(3) Include such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services; for example, sealing from public scrutiny the record of any proceeding for which disclosure of a patient's record has been ordered.[29]

The above process is the identical process described and required by Family Court Judge Newell in his 2005 Decision in the case of *S.M.K v. J.F.*[30] This procedure was necessary in Judge Newell's case because Mother would not release her treatment records which were being requested by Father in a child custody case.

In the hopes of being helpful to others who may have to address such issues in the future, the Court will provide some observations about the possible defects in the manner in which the AGAL and DFS attempted to obtain disclosure of Mother's records. Because the AGAL did not have a prior written consent from Mother authorizing the release and disclosure of her records from Thresholds, the AGAL was required to follow the procedure of seeking a Court Order as just set forth above. Appropriately, the AGAL filed a motion and a Notice of Motion requesting that the Court find good cause to order the release and disclosure of Thresholds' records. The Notice of Motion that accompanied the AGAL's motion simply informed Thresholds that the motion had been filed, and that it would be decided by the Court at the Court's earliest convenience. It would have been preferable, except in the event of an emergency, that the motion give Thresholds and others an opportunity of at least 10 days in which to file a written response to the application, or request an opportunity to appear in person to voice an objection.

---

**29.** 42 C.F.R. § 2.64 (2009).

**30.** *S.M.K v. J.F.,* 2005 WL 4674284 (Del.Fam. Ct.).

The DFS Notice of Motion, in contrast to the AGAL's Notice of Motion, provided notice of an opportunity of 10 days in which to file a written response. It is certainly arguable that DFS was not required to even request a Good Cause Order because Mother had previously signed a release authorizing and directing Thresholds to release records to DFS. Having reviewed that release, however, it might have been arguable that the release signed by Mother for DFS was not specific enough in the kind and amount of information being sought.

Neither the Good Cause Motion filed by the AGAL or by DFS used a fictional name which one might feel is required by the regulations application section, wherein it states, "An application must use a fictitious name, such as John Doe, to refer to any patient and may not contain or otherwise disclose any patient identifying information ..." [31] However, the fictitious name requirement is also exempt where, "the court has ordered the record of the proceeding sealed from public scrutiny." [32]

Given the manner in which dependency/neglect child welfare cases are treated in the Family Court of the State of Delaware, where the proceedings are not open to the public, and the files are also not available to the public for inspection, the Court sees no need to file motions for those records using a fictitious name. [33] If necessary in a particular case, the Court can decide to seal the records and review them in chambers for added protection. [34]

Clearly, the Court must respect the confidentiality protection set forth in the Drug Abuse Prevention, Treatment and Rehabilitation Act regarding the records of any patient of any facility which treats substance abuse and receives direct or indirect federal assistance. [35] There is certainly a legitimate purpose to this Act which, as stated, is intended to ensure that an alcohol or drug abuse patient in a federally assisted alcohol or drug abuse program is not made more vulnerable by the availability of his or her patient record than an individual who has an alcohol or drug problem and who does not seek treatment. [36]

But there is also a legitimate purpose in the dependency and neglect child welfare cases that come before this Court which are driven by another federal statute, the Adoptions and Safe Families Act of 1997. [37] Following the direction and guidance of ASFA, this Court is attempting to make children safe, give them permanency, and

**31.** 42 C.F.R., § 2.64(A) (2009).

**32.** *Id.*

**33.** DEL.CODE ANN. tit. 10, § 1063 (2009).

**34.** *See Involuntary Termination of the Parent Child Relationship of A.H., L.H., C.H., and J.H.,* 832 N.E.2d 563 (Ind.Ct.App.2005), wherein the Court held that any technical non-compliance with federal regulations governing the disclosure of a parent's psychiatric records is harmless error. Also citing, *Doe v. Daviess County Div. of Children and Family Serv.,* 669 N.E.2d 192 (Ind.Ct.App.1996), holding that a Mother's rights were not violated under 42 U.S.C.A. § 290dd–3(b)(2)(C) as Mother's protected interest in her medical records must give way to the best interest of a

child in a termination proceeding; and *Carter v. Knox County Office of Family and Children,* 761 N.E.2d 431 (Ind.Ct.App.2001), wherein the court held that the trial court's failure to follow procedures for disclosure under 42 U.S.C.A. § 290dd was outweighed by the court's need to serve the interest of the child; and *Matter of Baby X,* 97 Mich.App. 111, 293 N.W.2d 736 (1980), where it was determined that Mother's right to confidentiality as a drug abuse patient, guaranteed under both federal and state law, had to yield to the best interest of the child.

**35.** 42 U.S.C.A. § 290dd–2 (2008).

**36.** 42 C.F.R. § 2.3(b)(2) (2008).

**37.** 42 U.S.C.A. § 671(a)(15)(A) (1997).

make that first hope of permanency be the possibility of reunification with their parent or parents. These are also the goals of our Delaware Legislature.[38] When the purposes of the two federal Acts are placed in the balance, this Judge has no question that the interest in child welfare and custody cases must take precedence over the needs to protect the confidentiality of a parent's medical and treatment records where that parent is involved in a dependency or neglect case, or even a custody case. Another Judge of this Court has already come to that same conclusion.[39]

■ We next turn to the suggestions of Thresholds' attorney that it should be entitled to special accommodations and reasonable reimbursement for its expenses and fees prior to complying with the subpoena of the Court. Thresholds first needs to understand that responding to a subpoena *duces tecum* does not necessarily make the individual or entity subpoenaed an expert witness. In the case before the Court, Thresholds may have been called as a fact witness, in which case it would not have been entitled to fees or costs.

The Court is unaware of any Court Rule or Delaware statute which requires compensation to be paid in advance of a hearing, even for an expert witness. Furthermore, Mother in this dependency case has received Court appointed counsel because she is qualified as an indigent parent. As such, she can seek payment of reasonable costs and expenses of litigation from the Court. This is contemplated by Supreme Court Rule 26.1(d) and (e). Once the witness appears and testifies, and then submits a bill, the parent's attorney can request funds from the Court. The Court can then make its determination of whether the witness appeared as a fact witness or an expert witness, and proceed thereafter with authorizing appropriate payment.

Over the past several years, the Division and other participants in dependency/neglect proceedings have typically worked together to provide the Court with information by stipulation and/or phone testimony, thus reducing the costs of entities such as Thresholds. In this case there were many triggering events which occurred in mid-August, 2008, including the execution of releases by Mother, the service of a subpoena at Mother's request on Thresholds, and the filing of Motions and the entry of an order of disclosure from Thresholds to DFS and the AGAL. Timely compliance and attention to this matter by Thresholds would have spared everyone, including Thresholds, the additional time and expense of coming to Court for the Adjudicatory Hearing and also the Contempt Hearing. It is extremely unfortunate that it took more than two months, which included additional requests for information by the AGAL, before any information was exchanged. Thresholds finally provided the AGAL with the records three days after the scheduled hearing.

In the Court's opinion, Thresholds' lack of careful attention to this Court's Order of Disclosure and this Court's subpoena *duces tecum*, requires this Court to not only find Thresholds in contempt, but also to issue an appropriate sanction in the form of a fine. Hopefully, this problem will not occur again in the future. Not only did Thresholds fail to resolve the issues with the interested parties on a timely basis, Thresholds also failed to seek timely relief from this Court despite having legal representation. Thresholds even had the audacity to suggest that this Court should provide it with special accommoda-

---

**38.** Del.Code Ann. tit. 29, § 9003(3)(a-b) and (4) (2009).

**39.** *See S.M.K.,* 2005 WL 4674284.

tions without first exploring those possibilities with the parties themselves.

The considerable delay and failure of Thresholds, either from a lack of attention, or due to neglect, or even perhaps from a sense that it could use the Drug Abuse Prevention Treatment and Rehabilitation Act to shield itself from cooperating with reasonable requests of attorneys and compliance with Court orders cannot be accepted or tolerated by this Court.

For all of the reasons stated herein,

IT IS HEREBY ORDERED:

1. Thresholds, Inc. is in contempt for its failure to comply with the subpoena *duces tecum* requiring it to appear at a Dependency Adjudicatory Hearing before this Court on October 20, 2008.

2. In consideration of the failure to appear for that hearing, as well as all of the other facts recited in this Decision, the Court hereby imposes a fine on Thresholds, Inc. of $1,000.00, of which $500.00 is suspended so long as Thresholds, Inc. is not found in contempt in the future for similar non-compliance. The remaining unsuspended balance of $500.00 is to be paid to this Court within 30 days of the mailing date of this Order.

IT IS SO ORDERED.