**A.B.,\* Petitioner,**

v.

**THRESHOLDS, INC., Respondent.**

No. CS08–02438.

Family Court of Delaware,
Sussex County.

Submitted: July 27, 2009.

Decided: Aug. 31, 2009.

Ashley M. Oland, Esquire, The Law Office of Edward C. Gill, P.A., Georgetown, DE, for the Petitioner.

\* Pseudonyms have been used pursuant to Supreme Court Rule 7(d).

André M. Beauregard, Brown, Shiels, and O'Brien, P.A., Dover, DE, for Respondent.

## OPINION

HENRIKSEN, J.

Ashley Oland, Esquire represents A.B. (mother), an indigent parent in a child dependency case, as part of a contract with this Court. During the course of representing mother, it became necessary for Ms. Oland to pursue a contempt finding against Thresholds, Inc. (Thresholds) because of its failure to produce records regarding Ms. Oland's client's substance and alcohol abuse treatment received at Thresholds.[1] Thresholds failed to timely produce these records and appear at a hearing despite Ms. Oland's client having executed an appropriate release and also despite this Court's subpoena *duces tecum* compelling Thresholds to appear at Court with the records. Ms. Oland contends that Thresholds' non-compliance required her to perform legal services that went beyond the scope of the reasonable expectations of her indigent parent child dependency contract. She further avers that the time she was required to spend representing her indigent client in the dependency case for matters necessitated by Thresholds' actions, prevented her from spending time during which she could have been representing her private clients at her usual privately billed rates. Therefore, Ms. Oland has requested that the Court award her attorney's fees for the time she had to spend on behalf of her dependency contract client in her pursuit of a successful contempt action against Thresholds based on the hourly rate at which she would ordinarily bill a private client. For the reasons hereinafter stated, the Court will grant Ms. Oland's request to be paid attorney's fees by Thresholds calculated at the hourly rate she would normally charge a private client.

## Facts

Ms. Oland requested two subpoenas *duces tecum* be served on Thresholds during the course of her representation of mother. The Court caused the first subpoena to be served upon Thresholds on August 8, 2008, and requested that Thresholds produce documents related to mother's drug and alcohol treatment at a hearing on August 11, 2008. Thresholds failed to produce the documents at Court on that date. The Court declined to find Thresholds in contempt for failing to abide by this subpoena due to the short notice.

A second subpoena *duces tecum* was issued immediately following the August 11, 2008 hearing requesting that the same materials be produced at a hearing on October 20, 2008. In addition, Ms. Oland's client signed an appropriate release on August 15, 2008 for her records to be provided to Ms. Oland, and the Court also issued an Order on August 13, 2008 requiring the records of Ms. Oland's client to be provided within 20 days to the Attorney Guardian *Ad Litem* in the dependency case as well as to the Division of Family Services. Despite having these several timely orders and requests, Thresholds failed to produce the requested documents regarding mother's treatment at the October 20, 2008 hearing. In addition, and almost unbelievably, the Thresholds representative failed to appear for the hearing, and its attorney made no effort to quash the subpoena. Thresholds' actions were without basis, and demonstrated a lack of concern and disrespect for the authority of the Court. Its actions delayed the possible visitation between a mother and her child. As a consequence, Ms. Oland was

---

1.  *Div. of Family Servs. v. A.B.,* 980 A.2d 1045   (Del.Fam.Ct.2009).

required to go well beyond the reasonable expectations of her dependency contract and take extraordinary steps to enforce and protect her dependency client's rights.

In response to the Rule to Show cause petition filed by Ms. Oland on behalf of her indigent dependency client, the Court issued an Order which held Thresholds in contempt for failing to comply with the subpoena. The Court sanctioned Thresholds by fining it $1,000.00, of which $500.00 was suspended. This fine was payable to the Court, and contemplated the disrespect demonstrated by Thresholds for the authority of the Court.

Following the issuance of that Contempt Order, Ms. Oland filed her Motion for Attorney's Fees. She argues that the time spent on Thresholds' contempt could have been afforded instead to her private clients and at the hourly rate she bills her private clients. She requests a total of $1,638.75 in attorney's fees. Thresholds opposes an award of attorney's fees, claiming that the time Ms. Oland spent on this case should be covered by her dependency contract with the Court.

Ms. Oland filed a memorandum of law supporting her motion. Thresholds, through its attorney, André M. Beauregard, Esquire, sent a response letter, arguing that Ms. Oland's motion should be summarily dismissed or denied. Ms. Oland then filed a response letter addressing the shortcomings in both Thresholds' arguments and its failure to follow proper Court procedure. Thresholds again responded to Ms. Oland via letter.

### Discussion

The Court will first address Thresholds' response letter dated August 20, 2009, wherein Counsel for Thresholds requests the summary dismissal of Ms. Oland's motion. Thresholds alleges that Ms. Oland failed to submit a copy of her dependency contract as well as her memorandum by the date mandated by the Court's July 28, 2009 Order, which called for the memorandum to be submitted by August 13, 2009. The arguments put forth by Thresholds fail. Counsel for Thresholds has failed to make a proper motion to dismiss. Counsel instead asks the Court to dismiss the motion through a letter responding to Ms. Oland's memorandum. This is certainly improper under Family Court Rule of Civil Procedure 41, which calls for the respondent to move for dismissal. Moreover, even if his letter was accepted as a proper motion, this Court would deny Thresholds' counsel's request to dismiss Ms. Oland's motion. She filed and sent to opposing counsel her memorandum on August 13, 2009. Counsel for Thresholds argues that he did not receive it until August 19, 2009 due to an incorrect address thereby violating the Court's Order. However, the excusable mistake was rectified by Ms. Oland's office in a timely manner.[2] Therefore, the Court will not dismiss Ms. Oland's motion.

The Court now turns to the merits of Ms. Oland's motion. Ms. Oland has requested attorney's fees and costs to be paid by Thresholds in relation to its failure to produce subpoenaed documents. Ms. Oland provided the Court with the necessary affidavit accounting for time and rates of pay. She recites the hourly rates she

---

**2.** Ms. Oland pointed out via her response letter dated August 21, 2009, that she originally sent Counsel for Thresholds a copy of her memorandum to the address listed in the 2009 Delaware Legal Directory. However, it was sent back to her office because he had changed locations. She states that this caused a delay in his receipt of the letter. She also explained an oversight in mailing her contract with the Court to Counsel's office and has since sent him a copy of the contract.

would bill a privately retained client as $175.00, $200.00, and $225.00 per hour. She also avers that she expended 8.3 hours on matters relating to Thresholds' failure to comply with her subpoena. The total amount she is requesting is $1,638.75.

Thresholds argues that Ms. Oland's motion should be denied because she filed the contempt request against Thresholds, thereby creating the need for her to spend the extra time in arriving at a successful contempt action against Thresholds.

Thresholds also contends that Ms. Oland has not proven that she would have had private cases which would entitle her to the aforementioned rates of pay. The Court will take judicial notice of the frequent and regular representation by Ms. Oland of private clients in the Family Court on the days when Ms. Oland is not representing her indigent clients in dependency proceedings.

When considering an award of attorney's fees, the Court is guided by Family Court Rule of Civil Procedure 88, which reads:

> In every case where there is a legal or equitable basis therefor the Court may assess a party the reasonable counsel fees of any other party. Where counsel fees are requested the attorney shall submit to the Court an affidavit stating the following:
>
> (1) time and effort expended;
>
> (2) an itemization of services rendered;
>
> (3) relevant hourly rates;
>
> (4) itemization of disbursements claimed;
>
> (5) any sums received or that will be received with respect to legal services and/or disbursements; and

> (6) any information that will enable the Court to properly weigh the relevant factors set forth in the Rules of Professional Conduct, Rule 1.5.[3]

Awards of attorney's fees are proper when there is a legal or equitable basis. In this case, Ms. Oland has claimed that an award of attorney's fees would be equitable. She argues that, had it not been for Thresholds' flagrant disobedience of Court Orders, she would have been able to use the time she was required to spend regarding Thresholds instead to attend to the matters of private clients. She notes that it is the revenue collected from private clients that pays for operational expenses, without which she would be unable to provide representation to her contract clients.

Ms. Oland's Indigent Parents' Attorney Contract (The Contract) sets forth her duties. First of all, The Contract identifies her as an independent contractor. The Contract explains that she has the full responsibility to provide her "own support services including, but not limited to, secretarial services, general office support, duplication, professional liability insurance and travel." The Contract goes on to state, "The services rendered by you under this contract shall be in an attorney-client relationship subject to the Delaware Lawyers' Rules of Professional Conduct."

Because of the independent contractor nature of The Contract, it includes special terms that allow the waiver of certain filing fees and transcript costs that are ordinarily necessary to the indigent client's case. Given the important rights at stake for an indigent parent in a dependency case, where there is a potential for the eventual termination of their parental rights, it is also not surprising that The Contract includes the reasonable expecta-

---

3. Fam. Ct. Civ. R. 88.

tion that the attorney must represent her indigent client on appeals to the Delaware Supreme Court.

By specifically excluding payment or reimbursement for basic office support services, The Contract, by its very nature, envisions certain limitations on what the contract attorney is expected to do for a client, while still requiring the attorney to represent the indigent client with the same zealousness as the attorney would represent any other client. In the attorney-client relationship of a private client, where the private client is paying fees and costs, the expense involved in pursuing a case is always a consideration. In fact, the expense of litigating a private matter often drives the parties to arrive at a settlement. In a private case, where an abuse by one party may lead to a finding of contempt, it is clearly reasonable for the successful attorney to be awarded his or her costs and attorney's fees, especially where the infringement of the violating party is blatant. In representing a private client, the attorney charges a fee calculated to sustain the costs of running an office, while at the same time providing an income for the attorney.

In the present case, where The Contract for representing the indigent parent does not include or build within its rate compensation for maintaining the office, without which the attorney would likely be ineffective in representing indigent clients or otherwise, it is unreasonable and inequitable to expect an indigent parent's contract attorney to have to absorb the loss of revenue to protect an indigent client against dilatory, frivolous, or abusive litigation. If the Court were to rule otherwise, a contract attorney, who is doing a service for the Court by representing the indigent parents in this difficult litigation where so much is at stake, would likely go broke by having to spend all of his or her time dealing with the inappropriate actions of another party while still having to maintain an office.

Ms. Oland is a private attorney. In addition to representing her private clients, she represents indigent parents in child dependency cases pursuant to a contract that defines her as an independent contractor and which does not compensate her for the very real expenses of maintaining an office. That office and support staff provide assist her with both her private and indigent clients. Because of the gross defiance of the Court's subpoena on the part of Thresholds, Ms. Oland had to go well beyond the normal and reasonable expectations of her dependency contract position in her representation of mother. Therefore, Ms. Oland is entitled to receive the fees she would have been able to earn in the course of representing her private clients had she not been required to take action against the unreasonable position assumed by Thresholds.

After considering the enumerated factors in Rule 88 and those in of the Delaware Lawyers' Rules of Professional Conduct, Rule 1.5, this Court agrees that it is equitable to award Ms. Oland attorney's fees and costs associated with prosecuting mother's Rule to Show Cause petition. Ms. Oland executed a valid and timely subpoena *duces tecum* which Thresholds flagrantly disregarded. As a result, Ms. Oland could not effectively advocate on behalf of her dependency client. Ms. Oland did not bring the loss of private revenue on herself. In the course of zealously representing her client, she pursued a contempt action against Thresholds to a successful conclusion. Such means would not have been necessary except for Thresholds' defiance of the subpoena. The Court finds that her claimed time of 8.3 hours is reasonable under Rule 88, and that the amount she has billed for those

hours, at her privately billed rates, is also appropriate.

Before closing, the Court is compelled to comment on two recent comments made by Thresholds through its attorney's latest letter to the Court dated August 24, 2009. For reasons the Court does not understand, and further does not appreciate, Thresholds' attorney states that the amount of the Indigent Parents' Attorney Contract "seems like a large amount of money for a contract of this nature." This is quite disconcerting coming from an agency involved in part in providing counseling treatment to parents who are involved with the child welfare system in Delaware, where the Court is attempting to provide safety and permanency to children who have been taken into foster care. Obviously, Thresholds has no conception about the amount of time and effort put forth by the dependency contract attorneys. They are usually in Court three full days per week. Plus, when they are not in Court, they are preparing pleadings, performing research, interviewing clients and witnesses, pouring over Division of Family Services and other institutional records, and sometimes writing briefs for the Supreme Court. In this Court's opinion, the contract attorneys in dependency cases are vastly underpaid, and we are extremely fortunate at this time to have two very competent and committed attorneys in Sussex County fulfilling the positions.

In addition, the last full paragraph of Thresholds' August 24th letter states that it, through its attorney, "hope and pray that [mother's] re-unification has been resolved one year after this matter is still pending. I don't think that a contempt request was needed to expedite her situation and that a Motion to Expedite [mother's] matter would have been more helpful and beneficial for her cause." This

Court's Contempt Order of June 25, 2009 already spoke to Thresholds' "audacity to suggest that this Court should provide them with special accommodations." Is the language noted above contained in its August 24th letter intended by Thresholds to suggest that the Court misspent its time in addressing Thresholds' disobedience to a subpoena, and that Thresholds' gross negligence or perhaps intentional disregard of the Court's powers should be minimized? Doesn't Thresholds understand by this time that its disobedience to the Court delayed mother getting visitation with her child, and delayed the process of potential reunification between her child and mother?[4] If the Court had thoughts of expediting mother's situation, it would have needed Thresholds' information before proceeding. Thresholds should be more interested in being sure it attends to its business, including timely responding to releases for information and Court Orders, rather than implying that the Court was not performing its duty of pursuing the safety and permanency for the child. If Thresholds intends to continue to provide therapy and assistance to troubled, substance abusing parents of dependent children, Thresholds can continue to expect to be required to attend Court proceedings. If the financial fine in the latest contempt order did not get Thresholds' attention, the Court expects that any future fines or sanctions will.

For all the reasons stated herein, it is hereby ordered that Thresholds will pay Ms. Oland $1,638.75 within 60 days from the issuance of this Order.

It is so ordered.

---

4. Permanency of this child was resolved by a guardianship order dated April 6, 2009.